Herman Franck, Esq. (SB #123476)
Elizabeth Betowski, Esq. (SB #245772)
**FRANCK & ASSOCIATES**
910 Florin Road #212
Sacramento, CA 95831
Tel. (916) 447-8400
Franckhermanlaw88@yahoo.com

Attorneys for Plaintiffs Seng Xiong;
Thao Xiong; Lor Vang; and Lue Vang

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SENG XIONG; THAO XIONG; LOR VANG; and LUE VANG | Case No. 23-cv-02531-DJC-DB |
| Plaintiffs, | **PLAINTIFFS SENG XIONG; THAO XIONG; LOR VANG; AND LUE VANG MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT DR. YANG DAO'S MOTION TO DISMISS; ALTERNATIVE REQUEST FOR LEAVE TO AMEND** |
| v. | |
| LAO PEOPLE'S DEMOCRATIC REPUBLIC; PRESIDENT THONGLOUN SISOULITHIS; PRIME MINISTER SONXAI SIPHANDON; SOUANSAVAN VI-GNAKET, MINSTER OF JUSTICE; GENERAL CHANSAMONE CHANYALATH, MINISTER OF DEFENSE; LIEUTENANT GENERAL VILAY LAKHAMFONG, MINISTER OF PUBLIC SECURITY; DR. YANG DAO | Date: March 28, 2024 Time: 1:30pm Courtroom: 10 |
| Defendants | |

Plaintiffs Seng Xiong, Thao Xiong, Lor Vang, and Lue Vang herewith submit Memorandum of

Points and Authorities in support of opposition to Defendant Dr Yang Dao's motion to dismiss.

1

## TABLE OF CONTENTS

2    I. SUMMARY OF ACTION…………………………………………………………………..2

3    II. SUMMARY OF DEFENDANT DAO'S MOTION TO DISMISS……………………...…6

4

5    III. DEFAULTS ENTERED AS TO EACH OF THE LAOS BASED DEFENDANTS…………..7

6    IV. ARGUMENT………………………………………………………………………...7

7      A. Standards On Motions To Dismiss……………………………………………………7

8      B. The Complaint States Facts Sufficient to Constitute a Claim For Relief Under the Alien Tort Claims Act………………………………………………………………………..9

9

10      C. Plaintiffs' Complaint Sufficiently Alleges Subject Matter Jurisdiction and Personal Jurisdiction over Defendant Dao, and his Motion to Dismiss based on Jurisdictional Grounds should be Denied…………………………………………………………...15

11

12      D. The Complaint Adequately Alleges a Substantial Occurrence of Events Within the Eastern District of California to Authorize Venue within the Eastern District of California……...21

13

14      E. As Alternative Relief, Plaintiffs Request Leave to Amend………………………….23

15    V. CONCLUSION……….…………………………………………………………………..23

16

17

18

19

20

21

22

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

**Cases**

*Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987)………………….19

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)…………………………………………………………..8

*Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011)…………………………..8

*Goodyear Dunlop Tires Operations, S.A. v. Brown* 564 U.S. 915 (2011)………………………...19

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)………………………….....8

*J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011)………………………………...19

*Kiobel,* 133 S.Ct. at 1669…………………………………………………………………….15

*Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011)………………………..8

*Sexual Minorities Uganda v. Lively,* 960 F. Supp. 2d 304, 323-24 (D. Mass. 2013)……...14-15, 17

*Will Co., Ltd. v. Lee,* No. 21-35617 (9th Cir. 2021)……………………………………………20

*World-Wide Volkswagen Corp. v. Woodson*, 444 US 286, 297-298 (1980)…………………...19-20

**Statutes, Rules, and Constitutional Authorities**

28 USC section 1291(b)……………………………………………………………………..21-22

Alien Tort Claims Act, 28 USC section 1350…………………………………………………..16

FRCP Rule 12(b)(6)…………………………………………………………………...6, 6-7, 9

# I.
## SUMMARY OF ACTION

Plaintiffs are each Hmong people born in Laos. Each of them were impacted by the circumstances we describe as the Laos atrocities against Hmong people, which forms the basis for the current civil lawsuit for violation of the Alien Tort claims act, 28 U.S.C section 1350. That act provides

> "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."

The details of the basic charging allegations under the Alien Tort Claims Act are set forth in the excerpts of Plaintiff's complaint, pages 58-62, paragraphs 97-114, a copy of which is attached to this brief as Exhibit D.

The following is a summary of the primary charging allegations of the violation of the Alien Tort Claims Act [See Complaint, paragraphs 98-121]:

The defendants violated of each Plaintiff's right to peaceful and quiet enjoyment of their homes and property in Laos after the peace treaties were entered into. Instead of permitting peaceful coexistence between the Hmong people and the Laos Communist regime, the Communist regime went after the Laos people in a campaign of horrors and atrocities, which required for survival the Hmong people generally to flee into the jungles. Plaintiffs fled the country of Laos, and made their way over to Thailand, where they became refugees. They had to give up all of their homes, possessions, and belongings, including their real property their personal property livestock basically their entire lives were removed from where they had grown up where they had lived The only place they really had known. Each of the plaintiffs left louse for Thailand became refugees in Thailand and were granted refugee visas to come to USA, came to USA, and became permanent

2

residency visa holders in the USA. Each of the plaintiffs is currently in USA as a green card holder and is thus in the category of an alien asserting this tort claim.

Each of the plaintiffs have a prospective economic advantage in the form of the creation of a Hmong homeland. The Lao People's Democratic Republic, with the direct participation of the named individual defendants herein, and with the assistance of Laos spies and operatives based in the territory of the USA, and as described above, have intentionally and willfully interfered with plaintiffs' prospective economic advantage by taking steps to eliminate plaintiff's attempts to establish that Hmong homeland.

The defendants and each of them accomplished this interference by making sure through their spying efforts that the process of establishing a separate country for the Hmong people would never happen.

The US federal government took the position that such a Hmong homeland would require official USA permission and or official United Nations permission, and that Plaintiff Seng Xiong never obtained that permission.

Unfortunately, the jury accepted that thesis, and convicted Seng Xiong during 2017 following a federal court trial in the United States District Court for the District of Minnesota. Seng Xiong was sentenced to 8 years in prison, and was released from that imprisonment during May 2022.

The other plaintiffs were not prosecuted in any way, shape, or form from that action.

The arrest of Seng Xiong brought the Hmong country/homeland program to a standstill. The government seized all the funds that would have been used and made available to buy land, and rather than allowing that program to go forward, stopped it in its tracks.

As noted above, Plaintiffs have continued to work on the campaign to establish a country/homeland for the Hmong people, and have not given up hope on this extremely important effort on behalf of the Hmong people.

Further torts committed by the Defendants and each of them include the murder and torture of Plaintiffs' immediate family members, thus the intentional tort of intentionally assaulting and killing the plaintiffs' family members. as specified above.

The conduct in implementing a policy that continues through to this writing also constitutes the intentional tort of infliction of extreme emotional distress causing each of the Plaintiff's general damages.

The conduct in eliminating all possibility of residing peacefully in Laos after the war, constitutes the intentional tort of interference with and breach of the right to peaceful enjoyment of their property and land.

The conduct in interfering with plaintiff's efforts to establish a Hmong Homeland constitutes the intentional tort of intentional interference with prospective economic advantage. From the spying efforts of the defendants USA-based spies including defendant Dao, the defendants had actual knowledge of the plaintiffs' prospective economic advantage in terms of their efforts to locate and establish a place where Hmong people could call home. The defendants intentionally took the efforts described above to interfere with that perspective economic advantage with the intent to ruin and destroy all hopes, dreams, and activities of the plaintiffs to form a Hmong homeland somewhere on Earth.

These intentional torts are all intertwined with one another, and are further part and parcel of the overall campaign by the Laos Communist regime and each of the defendants herein to commit a series of war crimes and atrocities against the among people generally and including the plaintiffs specifically.

As part and parcel of these atrocities committed by defendants and each of them, they have also commenced upon a campaign to make sure that the Hmong people can never have their own homeland. The defendants, and each of them, have taken affirmative steps, including activities in the territory of the USA to stop the Hmong Homeland effort, and to make sure that the Hmong people never have a place to call home.

The factual details that lay out the claims against Dr. Dao are set forth in the complaints Section II (Description of parties) and Section III (Conduct of Defendants Occurring within the Territory of the United States and Within the Eastern District of California). Excerpts from the complaint of sections II and III (complaint, pages -6-28) are attached to this legal brief as attachment C, and can be summarized as follows:

> One of the events that led to a complete cessation of the Hmong homeland campaign was done by defendant Yang Dao, who gave false police reports to the Minnesota Police department that the Hmong homeland program was actually some kind of an illegal gambling ring. There was never any kind of prosecution for any kind of illegal gambling ring, but the false reporting of the illegal gambling ring was enough to cause the Minnesota Police Department to refer the matter over to the USA Secret Service. The USA Secret Service agents then got involved, and completed a different kind of investigation into a claim of wire fraud and mail fraud. That claim was based on the notion that the Hmong homeland campaign, of which all plaintiffs have been directly and personally involved in,

5

was actually a fraud to just collect money up from Hmong people without any intent of ever actually establishing a Hmong homeland. This was a false report in that plaintiff's at all times duly intended to set up a monk country, and still have that general intent and are still undertaking efforts to establish a Hmong homeland.

## II.
## SUMMARY OF DEFENDANT DAO'S MOTION TO DISMISS

Defendant Dao filed a three-page letter on January 23, 2024 in which he requested that the court dismissed this action against him. His letter brief is attached as Exhibit B to this legal brief.

On January 26, 2024 The Court issued a minute order setting a hearing on defendant Dao's motion to dismiss for March 28, 2024. A copy of the court minute order is attached to this legal brief as Exhibit A.

Dr Dao's motion is largely in the realm of a denial of any culpability. See Dr. Dao's motion to dismiss, Exhibit B hereto, page 2, in which he states:

"With love for the Hmong and Lao people, both expatriates and those remain [sic] back in the homeland of Laos, I have dedicated my life service to support the US-Laos bilateral relationships that seek to promote peace, citizen diplomacy, and positive relations between the United States and Laos to foster family reunification, trade, business and tourism, in which tens of thousands Hmong and Lao overseas are visiting their country of Laos every year."

### III.
### DEFAULTS ENTERED AS TO EACH OF THE LAOS BASED DEFENDANS

The United States District Court for the Eastern District of California issued on February 5 2024 a clerk's entry of default as against each of the Laos-based defendants. A copy of the clerk's entry of default is attached as Exhibit E to this legal brief.

Dr Dao remains as the sole responding defendant in this action.

### IV.
### ARGUMENT

**A.  Standards On Motions To Dismiss**

Dr. Dao's motion to dismiss does not specify whether it is a motion to dismiss under for lack of subject matter jurisdiction; or personal jurisdiction. He doesn't give any facts in his moving papers that could be roughly construed as challenging the Court's subject matter jurisdiction or personal jurisdiction over him. He has been a long-time resident of the United States, and even says as much in his moving papers. See Exhibit B hereto, Dr. Dao's motion to dismiss, page 2, quoted above, in which he proclaims his involvement and Hmong community activities, his love for the Hmong people, and generally admits that he has been residing in the United States for decades.

Accordingly, we do not make much analysis on subject matter or personal jurisdiction claim, and instead construe his motion as more in line with a FRCP rule 12(b)(6) motion to dismiss for failure to state facts sufficient to constitute a claim for relief. See FRCP rule 12(b)(6), which provides in part:

"(b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

***

(6) failure to state a claim upon which relief can be granted

The standards that apply to a motion to dismiss for failure to state fax constituting a claim for relief are set forth as follows:

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

*Xiong et al. v. Laos*
Opposition to Dao Motion to Dismiss

**B. The Complaint States Facts Sufficient to Constitute a Claim for Relief Under The Alien Tort Claims Act**

Defendant's motion is largely a motion to dismiss pursuant to FRCP Rule 12(b)(6) for failure to state facts sufficient to constitute a claim for relief.

Defendant Dao's denial of the allegations of the complaint does not constitute a valid basis for a motion to dismiss. Instead, and as pointed out above in Argument A, under a motion to dismiss the court is to treat all allegations of the complaint as true and is then to apply legal standards to those facts to determine if a claim for relief has been stated.

We point out that in the particulars of the allegations as to Dr. Dao that we actually have YouTube publications in which photographs of Dr. Dao back in Laos receiving medals of commendation are shown. These YouTube publications are described in the complaint section III, excerpts of which are attached as Exhibit C to this brief and include the following description of the YouTube publications:

1.Wikilinks re Dr. Yang Dao:

www.wikileaks.org/plusd/cables/07VIENTIANE487_a.html

6 pages

Pages of interest

Page 1, summary:

"The politics of the Hmong communities in both Laos and the United States are extremely complex. As a result, a conversation with even a well educated Hmong (or Hmong-American) leader involves exaggeration and guess work and often raises more questions than it provides answers. Nevertheless, a recent conversation with Hmong-American leader Dr. Yang Dao raises several issues that may be worth pursuing. Dr. Yang Dao also asks for

police/FBI protection before agreeing to address a Hmong-American gathering in Fresno, California. Since he may be in possession of important, time-sensitive information and seems to be willing to pass a positive message -- that Hmong-American support for attempts to destabilize the Lao Government violates U.S. laws -- the FBI may have interest in contacting him, and the Department may have an interest in supporting the dissemination of this message. Dr. Yang Dao asks the Department to write letters directly to Hmong groups in the United States to repeat this message. Please see our action requests in paragraph 13."

The Wikileaks article shows entries from official United States records as of June 11, 2007.

2. Article from Communist Party of Vietnam online newspaper

https://en.dangcongsan.vn/overseas-vietnamese/overseas-vietnamese-professor-recalls-memories-about-president-ho-chi-minh-597505.html

Pages of interest:

Page 2: "Prof. Dr. Yang Dao also expressed emotion when recalling the first time he visited Uncle Ho's Mausoleum and, like other Vietnamese far from home, he always remembers Uncle, hoping to have the opportunity to return home every year and visit Uncle Ho's Mausoleum.

His family belongs to H'Mong ethnic minority in Meo Vac District, Ha Giang Province. He was the first H'Mong ethnic minority person to receive a doctoral degree in social sciences from the Sorbonne University, France. After that, he and his family moved to live and work in Minnesota, the US.

He taught Southeast Asian anthropology at the University of Minnesota, Minnesota, until retirement. He has always made active contributions in uniting the H'Mong community and the Vietnamese community in order to promote the national cultural identity and connect people with the homeland./.

3. Article from AsianFuse.net

https://asianfuse.net/discuzz/threads/yang-dao.30861/

The article has excerpts of a community chat forum that has content about Dr. Yang Dao's status as a Lao spy working in the United States, as seen by the following entry.

Pages of interest: page 3

"tavang **sarNie Juvenile**

he's 100% vietnamese. he's not even hmong. i don't hate him cuz he's viet. i hate him cuz he's working with the laos government and all trying to ruined us hmong peeps and he's a **<u>TRAITOR</u>**!!! he was lucky enough that a hmong family took him in as their child when no one else wanted him and this is what us hmong peeps get? it's just messed up."

4. YouTube Video:

https://youtu.be/GW5lm9PbgRk?si=VSbDa4WQG2UyWOnh

"Dr.Yang Dao Communist Spy receiving a Certificate Award from the Government of Lao PDR in Vientiane"; 10:15 in duration.

Description of YouTube: The video showed all the Lao and Hmong individuals overseas who worked for the Lao government [names unknown to plaintiffs]. These operatives are working in Fresno, CA and St. Paul, Minnesota, and Washington D.C., and other locations, and continue through to the date of the filing of this complaint to operate as spies for Laos.

The persons receiving the awards are not seen making any speeches, only the person that make the video does the talking.

There are two Hmong individuals also appeared on the video. One is George Vue in Fresno, CA and the other one is Chao Lee from the Twin Cities and he is staff member of US Congresswoman Betty McCollum Office. However, the video did not show they receive any awards. We all believed they are the network of Dr. Yang Dao political operatives.

The video was filmed in Vientiane Laos in 11/16/2010.

The video also shows other US-based Laos PDR spy operatives. The names and identities of which are not known to plaintiffs, also receiving recognition for good service.

5. Further Youtubes:

 "NEO LAO SANG XAT MEDAL DECORATION TO LAO-OVERSEAS 1.mpeg" on YouTube, https://youtu.be/PoHGsOFIxLM?si=uoQGxizadUc6AoSa

8:43 mins

A summary of this video is as follows: The video shows defendant Dr. Yang Dao and other Lao PDR USA-based spies receiving awards and recognition for their good service.

6. "Dr. Yang Dao of Neo Lao Sang Xat, Communist Agent"

https://youtu.be/Ihw4TBs6Sqc?si=7WmfGCavkEIiozzF; 1:00 min

The basic thrust of the complaint is that Dr. Dao, while inside the territory of the United States, did actually spy on Hmong political leaders such as plaintiffs in this action, and did report back to the government allows on his findings as an operative spy those findings included that the Plaintiffs were engaged in activities to create a Hmong homeland the Hmong people are without a

12

1  Homeland and are comparable to the challenges presented to the Jewish people before the creation

2  of the nation state of Israel. The Jewish population had become spread out throughout the world,

3  including all of Western Europe, Eastern Europe, and throughout modern-day Russia, and was

4  without a homeland until the establishment of Israel. In the same way, the Hmong people,

5  originally from China, spread out throughout Southeast Asia, including Laos, Vietnam, and

6  Thailand, and lived there peacefully loyal to the ruling monarchs of each country; indeed, some

7  became royal guards and royal soldiers that were relied upon by the various nation states. When

8  the Communists took over Vietnam and Laos, they destroyed everything that had to do with the

9  Royal family and monarchs. Laos retaliated against the Hmong people who were called upon by

10  the United States CIA to engage in a secret war in Laos. That basic retaliation as described in the

11  Complaint in this matter was that they would destroy Hmong people as a genocide, and engaged in

12  summary executions, rape of the young women, and mutilations of the young men including the

13  chopping off of genitals, all in a general effort to eliminate not only the Hmong people who helped

14  the USA in its war against Laos but also the seed of those Hmong to make sure that they would

15  never exist again. See excerpts of the complaint, Exhibit D here to paragraphs 98-114, which

16  describe these ongoing atrocities against the Hmong people.

17

18

19  We point out one of the unique features of this genocide is it is not simply a historical event it is

20  something going on right now and that continues to take place in the country of Laos. It also

21  continues in the form of Dr. Dao's activity as a spy, along with other spies that he developed as

22  part of his own network to keep track of Hmong people in the United States, and generally report

23  back to Laos about any political activities. When Dr. Dao learned that the group of Hmong people

24  headed up by Plaintiff Seng Xiong were attempting to create for the first time ever a Hmong

25  homeland, he took steps inside the territory of the United States to make sure that that would never

26  happen. Those particular steps were to falsely report to US law enforcement that Seng Xiong was

27

28

13

*Xiong et al. v. Laos*
Opposition to Dao Motion to Dismiss

engaged in some type of fraudulent activity and did not have the actual intent of ever setting up a Hmong homeland.  See excerpts of complaint attachment C hereto, paragraph 20, 27-31; and 58-62 for the details of Dr. Dao's personal and individual involvement

We note the following published United States District Court decision upholding an alien tort claims act claim involving a Uganda leader who while in New York was actively lobbying and promoting efforts to outlaw same-sex relationships in Uganda and to commit various torts arising from those efforts The case is *Sexual Minorities Uganda v. Lively,* 960 F. Supp. 2d 304, 323-24 (D. Mass. 2013) [treaty-violating conduct, involving trips from USA to Uganda; lobbying efforts to government officials in Uganda arising from the USA]:

> "The Amended Complaint adequately sets out actionable conduct undertaken by Defendant in the United States to provide assistance in the campaign of persecution in Uganda. To review these allegations, and at the risk of repetition, the Amended Complaint alleges that Defendant resides and operates out of Springfield, Massachusetts. (Dkt. No. 27, Am. Compl. ¶ 8.) It describes how, after Defendant traveled to Uganda in 2002, he continued to assist, manage, and advise associates in Uganda on methods to deprive the Ugandan LGBTI community of its basic rights. (*Id.* at ¶¶ 47, 55–56.) Defendant's Ugandan co-conspirators then contacted him in the United States in 2009 to craft tactics to counter the Ugandan High Court ruling confirming that LGBTI persons enjoyed basic protections of the law. (*Id.* at ¶ 36.) After going to Uganda in 2009, Defendant continued to communicate from the United States through Martin Ssempa to members of the Ugandan Parliament about the legislation proposing the death penalty for homosexuality. From his home in the United States, he reviewed a draft of the legislation and provided advice on its content. (*Id.* at ¶¶ 140, 161.) Given that Defendant is a United States citizen living in this country and that the claims against him "touch and concern the territory of the United States ...

14

with sufficient force to displace the presumption against extraterritoriality," a cause of action is appropriate under the ATS. *Kiobel,* 133 S.Ct. at 1669"

This case is right on point and shows a circumstance where the activities complained of occurred overseas in Uganda but were buttressed by behavior and conduct inside the territory of the United States to promote and lobby those efforts similar to this case, the activities being complained of primarily occurred in Laos we do not know of any incident where allows official as somehow murdered raped or tortured among person in the United States but just like in the Uganda case the case here is where there are people from Laos appointed by Laos to spy on the Hmong people here and to trip them up if they should try to make their own remedies to the tragedies and atrocities of what happened in Laos by setting up a new nation state for Hmong people

Based on the foregoing Dr. Dao's motion to dismiss should be denied.

**C.  Plaintiffs' Complaint Sufficiently Alleges Subject Matter Jurisdiction and Personal Jurisdiction over Defendant Dao, and his Motion to Dismiss based on Jurisdictional Grounds should be Denied**

Defendant Dao's motion includes a phrase that he is challenging either personal or subject matter jurisdiction [See Exhibit B, hereto, pages 2-3]:

"The Court must dismiss the Complaint with regards to me because:

Within the four corners of the Complaint and on its face, the Complaint fails to establish jurisdiction, venue, or state a claim from which relief can be granted;

All the allegations with regards to me are not true and do not have any basis in facts;

The Plaintiffs wish to sue a foreign state, its ministers, and asks this Court to hold an entire country, to which this Court does not have jurisdiction over, responsible for what may or

15

may not be their domestic policies over their own citizens AND this has nothing to do with me, a private US citizen;

I have not violated any "Law of Nations" or any laws in the United States, abroad, or international laws; and

I have not caused the Plaintiffs any damages."

1. The Complaint sufficiently alleges subject matter jurisdiction

As to subject matter jurisdiction, the Court does have subject matter jurisdiction because this is an action arising under federal law, the Alien Tort Claims Act, 28 USC section 1350.

Subject matter jurisdiction is further confirmed by the fact that Defendant Dao has been operating as a spy for Laos inside the territory of the United States. The Complaint is very specific about what the Defendant has been doing in the United States as far as spying on Hmong people, reporting back to Laos, and causing injury to Plaintiffs in the process. See excerpts of complaint pages 6-28, attached as Exhibit C to this legal brief. See also the charging allegations of the alien toward claims act claims, complaint pages 58-62, attached to this legal brief as Exhibit D.

As noted above, the main thrust of defendant Dao's motion is that the claims are not true. This is not a basis for a motion to dismiss, either on jurisdictional grounds, subject matter jurisdiction grounds, or any other grounds. The Defendant's motion has not articulated how the Court doesn't have jurisdiction over this Alien Tort Claims Act case, other than to say the allegations are not true.

We again cite the *Sexual Minorities Uganda v. Lively* case, noted above in Argument B, for the proposition that the court does have subject matter jurisdiction and personal jurisdiction over an

16

individual defendant who engages in conduct inside the territory of the United States to advance

the agenda of a foreign country's activities that constitute a tort against individual residents of that

country. See *Sexual Minorities Uganda v. Lively,* 960 F. Supp. 2d 304, 323-24 (D. Mass. 2013),

quoted above.

   2.   <u>The Uncontroverted allegations of the complaint are sufficient to establish personal jurisdiction over Dao</u>

The Uncontroverted allegations of the complaint are sufficient to establish personal jurisdiction

over Dao. We incorporate and refer to the specific events that defendant Dao caused to occur in

the state of California, and in particular, Fresno and Sacramento, CA, as are specified in the

Complaint, and are analyzed and discussed below in argument D, regarding Defendant's challenge

to venue. See Exhibit C to this brief, Excerpts of the complaint discussing the events that occurred

not only in the United States, but also specifically within the Eastern District of California. See in

particular paragraphs 21-26 re the plaintiffs'' Hmong homeland entities; 27-31 re activities of Dr.

Dao; and paragraphs 32-43 re the criminal prosecution United States v. Jack, CR-07-266-FCD;

and paragraphs 44-62 re the criminal prosecution of Seng Xiong We also point out that the

defendant Dao's spy network includes spy operatives that defendant is working with within the

state of California and within the Eastern District of California. See complaint paragraph 56-62

which states:

   "56. In addition to Defendant Yang Dao, Plaintiffs are aware of the names of at least two

   others such Lao PDR spy operatives working inside the territory of the United States to

   collect information concerning Hmong political activities and reporting that information

   back to Laos PDR officials: George Vue, and Dr. Sam Thao.

   57. These Laos PDR directed spying activities in the USA occur at a substantial level in

   Fresno, California and other locations within the Eastern District of California.

17

58. In Seng Xiong's criminal case in Minnesota, Defendant Dr. Yang Dao had publicly warned Seng Xiong and his group that they must stop and cease any activities in the pursuit of a Hmong Country because there is no laws allowing the Hmong People to have a Country. Dr. Dao further said and told the US government, US Prosecutor's Office, St. Paul Police Officers, and US Secret Service that there is no place, no land left anywhere in Southeast Asia or Asia for Hmong to have a country. Therefore, he argued that Seng Xiong's mission to establish a Hmong Country is fraudulent, and those supporting the Mission by voluntary donating money to the Mission are victims.

59. All these things are untrue and lies given by Dr. Yang Dao. Furthermore, Dr. Yang Dao had lobbied Steve Moua (a key witness in the criminal) to work and cooperate with him.

60. One of other things that the US Prosecutor in Minnesota told Seng Xiong's lawyer Allan Chaplain that the real reason the US government decided to arrest Seng Xiong was that he sold 10 acres of land in a foreign country, which is a lie told to US Prosecutor Office by Hmong Attorney Sia Lor in Minnesota.

61. Dr. Yang Dao has thus recruited many Hmong intellectuals, Veterans of the old NeoHom people, General Vang Pao's sons to work with him to stop Seng Xiong's mission.

62. A reasonable inference of the facts in light of what we know about what they did in the Minnesota case against you is that it was the result of Laos PDR spy operatives in the USA working with USA law enforcement to bring about false claims and false charges against politically-active Hmong individuals."

The federal criminal action is further described in the following Exhibits attached to the complaint:

18

Exhibit B: Submission of statements by the United States Attorney for the Eastern District of California regarding its reasons for dismissing the criminal case against General Pao and other Hmong defendants (not Plaintiffs herein) that admit a host of lies were used in that case. These statements are made to support Plaintiffs' contentions and allegations that the Laos government does operate a spy network in the territory of the United States and in the Eastern District of California to spy on Hmong people and to falsely report peaceful activities as being criminal activities leading to false prosecutions and a dismissal.

Exhibit C: Excerpts of Appellants' Opening Brief in Vang et al. v. Decker et al., Ninth Circuit Court of Appeals Case No. 16-15443

These facts are not controverted by the defendant, other than his unsupported conclusionary statement that all of the allegations against him are untrue.

Based on the foregoing, the Plaintiffs have alleged sufficient allegations to show personal jurisdiction through minimum contacts with the State of California that are transaction-specific, e.g. part of the spiring created maintain and kept by defendant Dao within the state of California and within the Eastern District of California. *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987); *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011); and *Goodyear Dunlop Tires Operations, S.A. v. Brown* 564 U.S. 915 (2011) allow personal jurisdiction over those who purposely market a product in the forum state and have continuous contacts with that state. See also *World-Wide Volkswagen Corp. v. Woodson*, 444 US 286, 297-298 (1980):

"When a corporation "purposefully avails itself of the privilege of conducting activities within the forum State," *Hanson v. Denckla,* 357 U.S. at 357 U. S. 253, it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by

1
2
3
4
5
6

procuring insurance, passing the expected costs on to customers, or, if the risks are too

great, severing its connection with the State. …The forum State does not exceed its powers

under the Due Process Clause if it asserts personal jurisdiction over a corporation that

delivers its products into the stream of commerce with the expectation that they will be

purchased by consumers in the forum State."

7
8
9
10

Defendant Dao purposefully availed himself of the State of California sufficiently enough to allow

for personal jurisdiction over him for Courts in the State of California, including the United States

District Court for the Eastern District of California.

11
12
13

We also point out that motions challenging personal jurisdiction are evidentiary in nature. See *Will
Co., Ltd. v. Lee,* No. 21-35617 (9th Cir. 2021):

14
15
16
17
18
19
20
21
22
23
24

"When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the

plaintiff bears the burden of demonstrating that jurisdiction is appropriate. See

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When the

Defendant's motion is based on written materials rather than an evidentiary hearing, as is

the case here, "we only inquire into whether [the plaintiff's] pleadings and affidavits make

a prima facie showing of personal jurisdiction." Id. (alteration in original) (quoting Caruth

v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 128 (9th Cir. 1995)).

Uncontroverted allegations in the complaint must be taken as true, and conflicts between

parties over statements contained in affidavits must be resolved in the plaintiff's favor. Id."

25
26
27
28

*Xiong et al. v. Laos*
Opposition to Dao Motion to Dismiss

In his motion to dismiss, other than saying the statements aren't true, defendant does not actually controvert the claims that various aspects of his spying behavior occurred in Fresno and Sacramento.  The specific allegations of the complaint should be deemed uncontroverted.

Defendant failed to provide any evidence, such as a declaration under oath or other admissible evidence, attesting to whatever factual claims he is asserting in his personal jurisdiction challenge. We have placed specific allegations of conduct committed by the defendant in the State of California and within the Eastern District of California, which Defendant has failed to rebut by any kind of admissible evidence. Accordingly, the motion to dismiss based on lack of personal jurisdiction should be denied.

Based on the foregoing, the motion to dismiss based on subject matter jurisdiction and/or personal jurisdiction should be denied.

### D.  The Complaint Adequately Alleges a Substantial Occurrence of Events Within the Eastern District of California to Authorize Venue within the Eastern District of California

The motion to dismiss also challenges venue in the Eastern District of California. Venue is authorized by 28 USC section 1291(b):

"(b)VENUE IN GENERAL.— A civil action may be brought in—

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

21

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."

The Complaint at paragraphs 21-26; specifies the following substantial occurrence of events inside the Eastern District of California.

See also Complaint, paragraphs 32-43, the curious case of a bizarre scam case filed by the US attorney's office against Hmong heroes including their General Vang Pao, in which they made a bizarre accusation, later to be dismissed, that the Hmong people had waged a war against Laos. This scam of a case was filed in the Eastern district of California and is in part the result of false information given by defendant Dao and his collection of spy operatives located within the Eastern District of California.

Based on these allegations, the Court can see that there are substantial events that happen inside the state of California. The Hmong homeland/country conduct and behavior of the plaintiffs occurs substantially in California, and the efforts to stop that Hmong country formation process has been pointed toward the entities created by the plaintiffs inside the state of California and specifically in Fresno, California which is in the Eastern District of California. The defendant Dao also keeps other spy operatives within the Fresno and Sacramento area, which has been specified in the Complaint. Based on those allegations, sufficient occurrences have been stated that constitute substantial occurrences within the Eastern District, and the motion to dismiss based on improper venue should accordingly be denied.

*Xiong et al. v. Laos*
Opposition to Dao Motion to Dismiss

**E. As Alternative Relief, Plaintiffs Request Leave to Amend**

As alternative relief in the event of court finds any inadequacies in the complaint plaintiffs request leave to amend to cure those inadequacies.

**V.**
**CONCLUSION**

Based on the foregoing, Dr. Dao's motion to dismiss should be denied. In the alternative, the Court should grant Plaintiffs leave to amend to cure any inadequacies of the Complaint determined by the Court.

Respectfully Submitted,

___/s/ Herman Franck, Esq._____                              February 6, 2024
Herman Franck, Esq.
Attorney for Plaintiffs

1

**LIST OF EXHIBITS**

2

3

Exhibit A: Court's Minute Order dated January 26, 2024 setting a hearing on Defendant Yang Dao's motion to dismiss on March 28, 2024 at 1:30pm in Courtroom 10

4

5

Exhibit B: January 18, 2024 Letter from Dr. Yang Dao to the Court [filed January 23, 2024] and construed as a motion to Dismiss

6

Exhibit C: Excerpts of Plaintiffs' Complaint, section II [Parties] and Section III: Conduct of Defendants Occurring within the Territory of the United States and Within the Eastern District of California [pages 6-28]

7

8

Exhibit D: Excerpts of Plaintiffs' Complaint, section V. First Claim for Relief for Violation of the Alien Tort Claims Act

9

10

Exhibit E: Entry of Default by the USDC for the EDCA, February 5, 2024 against Laos-based defendants [NOT against Defendant Yang Dao]

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24

# Exhibit A

Activity in Case 2:23-cv-02531-DJC-DB Xiong et al v. Lao People's Democratic Republic et al Minute Order.

From: caed_cmecf_helpdesk@caed.uscourts.gov

To: CourtMail@caed.uscourts.gov

Date: Friday, January 26, 2024 at 04:20 PM PST

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**U.S. District Court**

**Eastern District of California - Live System**

## Notice of Electronic Filing

The following transaction was entered on 1/26/2024 at 4:20 PM PST and filed on 1/26/2024

**Case Name:** Xiong et al v. Lao People's Democratic Republic et al

**Case Number:** 2:23-cv-02531-DJC-DB

**Filer:**

**Document Number:** 13(No document attached)

Docket Text:
**MINUTE ORDER issued by Courtroom Deputy G. Michel for District Judge Daniel J. Calabretta on 1/26/2024: On the Court's own motion, and pursuant to Local Rule 230(b), a hearing on Defendant's [12] Motion to Dismiss is SET for 3/28/2024 at 1:30 PM in Courtroom 10 before District Judge Daniel J. Calabretta. IT IS OS ORDERED. [TEXT ONLY ENTRY] (Michel, G.)**

**2:23-cv-02531-DJC-DB Notice has been electronically mailed to:**

Herman Franck     franckhermanlaw88@yahoo.com

**2:23-cv-02531-DJC-DB Electronically filed documents must be served conventionally by the filer to:**

Yang Dao
4444 Fallgold Parkway North
Brooklyn Park, MN 55443

# Exhibit B

Dao Yang
4444 Fallgold Parkway North
Brooklyn Park, MN 55443

**FILED**

JAN 2 3 2024

January 18, 2024

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
          DEPUTY CLERK

The Honorable Judge Daniel J. Calabretta
Robert T. Matsui United States Courthouse
501 I Street, 13th Floor, Courtroom 10
Sacramento, CA 95814

Re:   *Seng Xiong, et al. vs. Lao PDR, et al.*
      Court File No. 2:23-CV-02531-DJC-DB

Dear Your Honor:

I humbly write to request that this Court summarily dismiss the *Complaint* and all the
allegations against me in the matter referenced-above.

I was personally served with the *Summons* and *Complaint* while visiting my son's home
in Brooklyn Park, Minnesota, on January 8, 2024.

I take the liberty of introduce myself. I am a former Hmong refugee from the late
Kingdom of Laos. My official name is Dao Yang. Dao is my first name and Yang is my
last name. According to our Hmong and Asian cultural traditions, we put the first name
first and the last name after. Therefore, my relatives and friends around the world
generally call me Dr. Yang Dao. I am the first Hmong in Asia to receive a Ph. D. in
Social Science, in May 1972, at the Sorbonne University of Paris, France. In April 1974,
I was appointed by His Majesty King Sisavang Vatthana as a member of the Lao
National Political Consultative Counsel of Coalition (Lao National Congress). Before the
communist takeover of Laos in 1975, my family and I took the road of exile to Thailand
(May 1975-June 1976), to France (July 1976-December 1972) and, finally, to the United
States of America (January 1983 to present).

Today, I am 81 years old and a retired American Citizen living in Brooklyn Park, MN,
not in Inola, Oklahoma as claimed by the Plaintiffs. I have never known, interacted with,
or met any of the Plaintiffs, Messrs. Seng Xiong, Thao Xiong, Lor Vang and Lue Vang.
They do not know me personally, and I do not know them personally. I only learned
about Mr. Seng Xiong and his Hmong State organization during his campaigns to solicit
funds from the Hmong American Diaspora in the United States who are homesick. I
learned about his subversive activities through the Hmong and American media during
his trial.

Cc: Mr. Herman Franck, Esq. (via USPS)

With love for the Hmong and Lao people, both expatriates and those remain back in the homeland of Laos, I have dedicated my life service to support the US-Laos bilateral relationships that seek to promote peace, citizen diplomacy and positive relations between the United States and Laos to foster family reunification, trade, business and tourism, in which tens of thousands Hmong and Lao overseas are visiting their country of Laos every year. Congresswoman Betty McCollum and Honorable Craig Duehring, former Assistant Secretary of the Air Force for Manpower and Reserve Affairs, who are my friends and who know me very well and about the kind of public services I have done for my people.

I have publicly stated in the past that I do not believe that the United Nations and White House have supported Mr. Seng Xiong or his Hmong State "Hmong Tebchaws" organization to secure land for "Hmong Homeland", and that China, Japan, Laos, Cambodian and Vietnam have all agreed to acknowledge the Hmong people and have saved a piece of land for the Hmong people as declared by Mr. Seng Xiong, leader of Hmong State organization, to the elderly Hmong. In addition to me, other Hmong leaders such as Professor Shoua Yang and Attorney Sia Lo have voiced similar statement to mine in Minnesota, U.S.A. Mr. Seng Xiong and the other plaintiffs (followers of Seng Xiong) have defamed us as "communists" and "spies" for the Lao P.D.R. because they did not support the false narrative of Mr. Seng Xiong and his Hmong State.

The United States was so concerned about Seng Xiong's activities that they indicted and convicted him of mail fraud and wire fraud. See *U.S. v. Seng Xiong*, No. 16-CR-167 (SRN/HB). Mr. Herman Franck, Plaintiffs' attorney in this case, has been involved in Mr. Xiong's unsuccessful post-conviction motions in Minnesota.

Now, Mr. Xiong and the other plaintiffs (Mr. Xiong's followers) are misusing this Court to harass and oppress me because I was outspoken against them during their scams.

The plaintiffs' alleged causes of action are (1) a general allegation of violation of "Vietnam War Era Peace Treaties and War Crimes Treaties" and (2) a misapplication of the Alien Tort Claims Act. They falsely accuse that I, a private individual without political ties or power in the United States or in the country of Laos, allegedly personally engaged in violations of international treaties.

The Court must dismiss the *Complaint* with regard to me because:

- Within the four corners of the *Complaint* and on its face, the *Complaint* fails to establish jurisdiction, venue, or state a claim from which relief can be granted;
- All the allegations with regard to me are not true and do not have any basis in facts;

Cc: Mr. Herman Franck, Esq. (via USPS)

- The Plaintiffs wish to sue a foreign state, its ministers and asks this Court to hold an entire country, to which this Court does not have jurisdiction over, responsible for what may or may not be their domestic policies over their own citizens AND this has nothing to do with me, a private US Citizen;
- I have not violated any "Law of Nations" or any laws in the United States, abroad, or international laws; and
- I have not caused the Plaintiffs any damages.

Finally, I am not able to make any appearances in this frivolous lawsuit because I am now 81 years old, just had abdominal aneurysm surgery on December, 30, 2022, have limited mobility and have no money. I cannot travel and have no energy to defend these false and outrageous claims. I absolutely and resolutely deny any and all claims, allegations, and assertions against me in this vengeful, improper, and bad-faith lawsuit.

Therefore, I respectfully request Your Honor to immediately dismiss this *Complaint* and its allegations against me in the interest of justice and fairness. I thank you for your understanding.

Sincerely,

Dao Yang

Cc: Mr. Herman Franck, Esq. (via USPS)

# Exhibit C

1  Herman Franck, Esq. (SB #123476)
   Elizabeth Betowski, Esq. (SB #245772)
2  **FRANCK & ASSOCIATES**
   910 Florin Road #212
3  Sacramento, CA 95831
   Tel. (916) 447-8400
4  Email: franckhermanlaw88@yahoo.com

5
   Attorneys for Plaintiffs Seng Xiong, Thao Xiong, Lor Vang, Lue Vang
6
                    UNITED STATES DISTRICT COURT
7              FOR THE EASTERN DISTRICT OF CALIFORNIA

8  SENG XIONG; THAO XIONG; LOR VANG;        Case No. _____
   and LUE VANG
9

10          Plaintiffs,                      **COMPLAINT FOR VIOLATION OF THE**
                                             **ALIEN TORT CLAIMS ACT,**
11          v.                               **INJUNCTIVE RELIEF; DECLARATORY**
                                             **RELIEF; ATTORNEYS FEES; REQUEST**
12 **LAO PEOPLE'S DEMOCRATIC**               **FOR JURY TRIAL**
   **REPUBLIC; PRESIDENT THONGLOUN**
13 **SISOULITHIS; PRIME MINISTER**
   **SONXAI SIPHANDON; SOUANSAVAN**
14 **VI-GNAKET, MINSTER OF JUSTICE;**
   **GENERAL CHANSAMONE**
15 **CHANYALATH, MINISTER OF**
   **DEFENSE; LIEUTENANT**
16 **GENERAL VILAY LAKHAMFONG,**
   **MINISTER OF PUBLIC SECURITY; DR.**
17 **YANG DAO**
18

19          Defendants

20

21

22 Plaintiffs Seng Xiong, Thao Xiong, Lor Vang, and Lue Vang hereby allege and state as follows:

23

24

25

26

27

28
                                                                              1

listing this defendant's position in the People's Democratic Republic of Laos as of the current time.

19. Defendant LAKHAMFONG is sued herein because of the official program of Laos to commit atrocities against the Hmong people required a legal policy, and justice system, permitting the killing; maiming; torturing; raping; poisoning the Hmong, their jungle, their water supply, and their food supply; and that such conduct against the Hmong people did not constitute a crime under Laotian law. He is also sued herein in his individual capacity for conduct he did in the past, and for which he is continuing to commit, pursuant to the power vested in him as Minister of Public Security. The Minister of Public Security is the head of the Ministry of Public Security, which is the official law enforcement agency of the Laotian Government.

20. Defendant DR. DAO YANG is an individual residing in Inola, Oklahoma, the United States of America and is working at the request of and on behalf of the Lao People's Democratic Republic to spy on Hmong political activities in the United States and to report back to Laos government officials concerning their observations and intelligence collection and gathering efforts.

### III.
### CONDUCT OF DEFENDANTS OCCURRING WITHIN THE TERRITORY OF THE UNITED STATES AND WITHIN THE EASTERN DISTRICT OF CALIFORNIA

A. Information re Hmong Homeland-Related Entities

21. The Plaintiffs' Hmong Country mission was initiated in Fresno in April, 2014. We have members from Fresno, Stockton, Sacramento, California, and across the United States, and consisted of The Hmong Business USA Corporation, Council of Hmong Public

6

Relations, and Hmong State; hmongstate.org. Members came from all walks of life, young, middle age to retirees, widows, professionals so forth.

22. Hmong Business USA Corporation was based in Fresno to develop Hmong Economy in California so that the participant could help the Hmong people in Asia. It has two offices: one in Fresno and one in New York City. Here is the following information from the California Secretary of States's website:

| | |
|---|---|
| *Initial Filing Date* | **06/07/2021** |
| *Status* | **Active** |
| *Standing - SOS* | **Good** |
| *Standing - FTB* | **Good** |
| *Standing - Agent* | **Good** |
| *Standing - VCFCF* | **Good** |
| *Formed In* | **CALIFORNIA** |
| *Entity Type* | **Stock Corporation - CA - General** |
| *Principal Address* | **2350 W SHAW AVE SUITE 123 FRESNO, CA 93711** |
| *Mailing Address* | **4225 OBERON AVE NORTH HIGHLANDS,CA95660** |
| *Statement of Info Due Date* | **06/30/2022** |
| *Agent* | **Individual TXUMUAKOU MOUA 4225 OBERON AVE NORTH HIGHLANDS, CA 95660** |

23. The Council of Hmong Public Relations's website [Council of Hmong Public Relations –
The Hmong Center Washington, DC (hmongpr.org)] describes this organization as
follows:

"Council of Hmong Public Relations (CHPR) is a non-profit organization that represents
the Hmong people around the globe while presenting our ongoing issues to the local,
state, or US federal governments, as well as the international community, so the Hmong
people can be better served. The mission is to better the Hmong people in the United
States and every corner around the world. Our agenda includes but not limited to the
following committees:

- Advocating for a Hmong Country in Our Ancestral Lands in Asia, Southeast Asia

- Hmong Persecution and Security

- Economics and Agricultural Development

- Advancing Democracy, Human Rights, and Fundamental Freedom

- Culture, Social Affair, and Unity

- Equal Rights and Equal Justice

- Analyzing Domestic, Foreign Affair Policy of the US and Congressional
  Legislation

- Empowering Hmong Women and Girls

- Kameng Religion and Mengcha

- Pahauh, Leng Kai and Ze Kai

Registered legally as a 501.c.4 non-profit organization in the United States, we largely
depend on private, charity, and corporate contributions or donations to sustain our
organization and pursue our mission. As a result, if your organization is working on any

of the above areas or committees, which to better the Hmong people, you may qualify for a grant or loan from CHPR with minimal interest rate"

24. See also press release by the council in the New York Chronicle entitled "Council Of Hmong Public Relations Working Committee For The Initiative Of A Hmong Country" dated September 25, 2023 [www.newyork-chronicle.com/news/story/389883/council-of-hmong-public-relations-working-committee-for-the-initiative-of-a-hmong-country.html]: "The Working Committee will focus on the promotion and preservation of the Hmong religion, Kamen, the dissemination of the Hmong written alphabet, Pahauh, designing the National Flag, promote cultural identity, and pursue the right of self-determination. With the establishment of a new office in New York, the Hmong Nation, in due time, will submit the Hmong Country Application to the United Nations General Assembly, relevant Agencies of the United Nations to become Member State securing its place in the family of nations. As a Member State of the United Nations, the Hmong people and Nation shall honor and fulfill their international obligations, safeguard human rights and maintain international peace and security."

25. With regards to Hmong State, its website states as follows [hmongstate.org]: "Hmong State is a non-profit organization based in the United States that strives hard to protect the Hmong people, who have been prosecuted in Asia continuously since the end of the Vietnam War in May 1975. We peacefully fight against the communist's perpetration, operation, and infiltration in the Hmong communities across the United States and oversea, while seeking a sovereign

state (a country) where the Hmong people can continue to live freely and peacefully like other ancient and indigenous peoples.

The Hmong people declare to be free from the communists' political ideology, philosophy, or propaganda by declaring ourselves to be free from the communists' domination, occupation, persecution, and genocide in our ancestral lands in Asia.

We also reserve the right to be free and independent as we are actively pursuing a self-government that will enable us to continue to expand, sustain, and maintain our unique identity, culture, heritage, and history.

Additionally, we are proud to strictly follow, embrace, and share the United Nation's Charter and Articles in creating peace and security around the globe, as well as its "Transforming our world" Agenda from 2015-2030.

26. The following information about the Hmong State is found on the California Secretary of States's website:

| | |
|---|---|
| *Initial Filing Date* | **09/19/2023** |
| *Status* | **Active** |
| *Standing - SOS* | **Good** |
| *Standing - FTB* | **Good** |
| *Standing - Agent* | **Good** |
| *Standing - VCFCF* | **Good** |
| *Formed In* | **CALIFORNIA** |
| *Entity Type* | **Nonprofit Corporation - CA - Public Benefit** |

|  |  |  |
|---|---|---|
| 1 | | **1401 21ST ST STE R** |
| 2 | *Principal Address* | **SACRAMENTO, CA 95811** |
| 3 | | **4903 E KINGS CANYON** |
| 4 | *Mailing Address* | **ROAD SUITE 271 FRESNO,CA93727** |
| 5 | *Statement of Info* | |
| 6 | *Due Date* | **09/30/2025** |
| 7 | | **1505 Corporation** |
| 8 | *Agent* | **REGISTERED AGENTS INC** |

9  Its Articles of Incorporation were filed on September 19, 2023; and its Statement of Information

10  was filed on September 26, 2023.

**B. Information re Dr. Yang Dao**

27. Dr. Yang Dao has been working in the capacity of a spy for Lao PDR since at least the

period 2007 through to the present, and is expected to continue to work as a spy for the

Laos PDR. His work as a spy has taken place and continues to take place in the Fresno,

CA area, where many Hmong people live and reside, in the St. Paul Minnesota are, where

many Hmong people reside, and in Washington, DC where he reports his information

obtained through his spying activities to the Laos PDR government at its embassy in

Washington, DC. His spying activities also take place in his current place of residence in

Inola, Oklahoma.

28. About the case against Vang Pao and 11 Hmong individuals back in 2007, we are not

sure how much or if Dr. Yang Dao played any role. Dr. Yang have many Hmong

individuals covertly working for him to infiltrate political organizations and pass it along

to the Lao Embassy in Washington as well as US Department of State.

11

*Xiong et al. v. Laos et al.*
COMPLAINT FOR DAMAGES UNDER THE ALIEN TORT CLAIMS ACT; INJUNCTIVE RELIEF; DECLARATORY RELIEF;
ATTORNEYS FEES; REQUEST FOR JURY TRIAL

29. Many Hmong organizations, individuals that have connections with Dr. Yang Dao, associate with Dr. Yang Dao, followers of Dr. Yang Dao are all anti our Hmong Country Mission.

30. A summary of internet publications about

1.Wikilinks re Dr. Yang Dao:

www.wikileaks.org/plusd/cables/07VIENTIANE487_a.html

6 pages

Pages of interest

Page 1, summary:

"The politics of the Hmong communities in both Laos and the United States are extremely complex. As a result, a conversation with even a well educated Hmong (or Hmong-American) leader involves exaggeration and guess work and often raises more questions than it provides answers. Nevertheless, a recent conversation with Hmong-American leader Dr. Yang Dao raises several issues that may be worth pursuing. Dr. Yang Dao also asks for police/FBI protection before agreeing to address a Hmong-American gathering in Fresno, California. Since he may be in possession of important, time-sensitive information and seems to be willing to pass a positive message -- that Hmong-American support for attempts to destabilize the Lao Government violates U.S. laws -- the FBI may have interest in contacting him, and the Department may have an interest in supporting the dissemination of this message. Dr. Yang Dao asks the Department to write letters directly to Hmong groups in the United States to repeat this message. Please see our action requests in paragraph 13."

The Wikileaks article shows entries from official United States records as of June 11, 2007.

2. Article from Communist Party of Vietnam online newspaper

https://en.dangcongsan.vn/overseas-vietnamese/overseas-vietnamese-professor-recalls-memories-about-president-ho-chi-minh-597505.html

Pages of interest:

Page 2:

"Prof. Dr. Yang Dao also expressed emotion when recalling the first time he visited Uncle Ho's Mausoleum and, like other Vietnamese far from home, he always remembers Uncle, hoping to have the opportunity to return home every year and visit Uncle Ho's Mausoleum. His family belongs to H'Mong ethnic minority in Meo Vac District, Ha Giang Province. He was the first H'Mong ethnic minority person to receive a doctoral degree in social sciences from the Sorbonne University, France. After that, he and his family moved to live and work in Minnesota, the US.

He taught Southeast Asian anthropology at the University of Minnesota, Minnesota, until retirement. He has always made active contributions in uniting the H'Mong community and the Vietnamese community in order to promote the national cultural identity and connect people with the homeland./.

3. Article from AsianFuse.net

https://asianfuse.net/discuzz/threads/yang-dao.30861/

The article has excerpts of a community chat forum that has content oabout Dr. Yang Dao's status as a Lao spy working in the United States, as seen by the following entry.

13

Pages of interest: page 3

"tavang **sarNie Juvenile**

he's 100% vietnamese. he's not even hmong. i don't hate him cuz he's viet. i hate him cuz

he's working with the laos government and all trying to ruined us hmong peeps and he's

a **TRAITOR**!!! he was lucky enough that a hmong family took him in as their child

when no one else wanted him and this is what us hmong peeps get? it's just messed up."


4. YouTube Video:

https://youtu.be/GW5lm9PbgRk?si=VSbDa4WQG2UyWOnh

"Dr.Yang Dao Communist Spy receiving a Certificate Award from the Government of

Lao PDR in Vientiane"; 10:15 in duration.

Description of YouTube:

The video showed all the Lao and Hmong individuals overseas who worked for the Lao

government [names unknown to plaintiffs]. These operatives are working in Fresno, CA

and St. Paul, Minnesota, and Washington D.C., and other locations, and continue through

to the date of the filing of this complaint to operate as spies for Laos. The persons

receiving the awards are not seen making any speeches, only the person that make the

video does the talking.

There are two Hmong individuals also appeared on the video. One is George Vue in

Fresno, CA and the other one is Chao Lee from the Twin Cities and he is staff member of

US Congresswoman Betty McCollum Office. However, the video did not show they

receive any awards. We all believed they are the network of Dr. Yang Dao political

operatives.

The video was filmed in Vientiane Laos in 11/16/2010.

The video also shows other US-based Laos PDR spy operatives. The names and identities of which are not known to plaintiffs, also receiving recognition for good service.

5. Further Youtubes:

"NEO LAO SANG XAT MEDAL DECORATION TO LAO-OVERSEAS 1.mpeg" on YouTube, https://youtu.be/PoHGsOFIxLM?si=uoQGxizadUc6AoSa

8:43 mins

A summary of this video is as follows:

The video shows defendant Dr. Yang Dao and other Lao PDR USA-based spries receiving awards and recognition for their good service.

6. "Dr. Yang Dao of Neo Lao Sang Xat, Communist Agent"

https://youtu.be/Ihw4TBs6Sqc?si=7WmfGCavkEIiozzF

1:00 min

31. See also Seng Xiong's testimony given 9.23.22 during the merits hearing on his application for protection under the convention against torture before the United States immigration court El Paso Texas hon. Michaels Pleters, judge presiding, pages 39-45.

32. A further incident that occurred within a territory of the United States was the institution of a fake fraudulent criminal action brought by the US Attorney's Office in the Eastern District of California against a group of Hmong individuals including Nia Vang and General Vang Pao entitled *United States v. Harrison Jack, et al*, E.D.Cal., Case No. CR 07-266 FCD. Following a series of court-ordered dismissals of some of the claims, the US Attorney made the decision to dismiss the entirety of the remaining undismissed

charges. Following those events, some of the defendants in that case including plaintiff Nhia Vang filed a malicious prosecution case against the United States of America by conduct of its undercover operator Stephen Decker of the ATFE, for knowingly prosecuting a complaint that was based on a pack of lies.

33. That civil malicious prosecution case was dismissed by the trial court in the Eastern District of California upon findings at the US Attorney's decision to dismiss the underlying criminal case did not reflect on the substantive merits of whether the defendants were in fact guilty or not, but was done instead for other policy and related issues.

34. In the malicious prosecution case, the case was dismissed early on and appealed to the Ninth Circuit Court of Appeals, which reversed the dismissal and remanded it to the trial court for further proceedings. On remand, the trial court issued an order dated August 20, 2015, instructing the US Attorney's office to give a statement as to why it dismissed the action, and if that dismissal was based on the substantive merits showing that the plaintiffs in the malicious prosecution case were actually innocent of the charges, or were dismissed due to other non-substantive issues.

The Order states at page 2, lines 18-21:

"Therefore, IT IS HEREBY ORDERED that, within fourteen (14) days of the date this Order is electronically filed, Defendants shall file a brief addressing whether the charges against Plaintiffs were withdrawn on the basis of a compromise among the parties or for a cause that was not inconsistent with Plaintiffs' guilt."

16

35. The United States/Defendants did submit a brief, a copy of which is attached hereto as Exhibit B. The brief states at Page 2, lines 6-10:

"On August 20, 2015, this Court, pursuant to the Ninth Circuit's instructions on remand, ordered Defendants to address whether the charges in the underlying criminal prosecution, *United States v. Harrison Jack, et al*, E.D. Cal., Case No. CR 07-266 FCD ("*Jack*"), were withdrawn on the basis of a compromise among the parties or for a cause that was not inconsistent with Plaintiffs' guilt.2 Dkt. No. 48."

36. The Government's brief [Exhibit B] goes on to state at Page 2, lines 11-14:

"As demonstrated in the accompanying declaration of United States Attorney Benjamin B. Wagner ("Wagner Decl."), despite probable cause and evidence that Nhia Kao Vang, David Vang and Chue Hue Vang (the "Vang Plaintiffs") 3 committed the remaining crimes with which they were charged, the United States dismissed the *Jack* prosecution based on factors unrelated to the merits. Through its rulings and comments, the court revealed a remarkable hostility to the government's case. *See* Wagner Decl., ¶ 4. The criminal defendants also alleged agent and prosecutorial misconduct, raising a risk of a negative credibility finding and suppression of evidence. *See id.* at ¶ 5-6. Going forward, the case would require a significant number of personnel, trial would be fiercely contested and any sentences imposed would likely be low. *See id.* at ¶ 7-8. As a result, U.S. Attorney Wagner weighed the costs and benefits of pursuing the case, and determined that no substantial federal interest was served by continued prosecution. *See id.* at ¶ 3, 9. None of these reasons for dismissal, however, are inconsistent with the guilt of the Vang Plaintiffs. Accordingly, Plaintiffs cannot maintain a claim for malicious prosecution."

37. The government explained its contention that the underlying criminal case was not dismissed as follows [Exhibit B, Page 3, lines 7- page 4, line 6]:

"In December, 2010, after three years of litigation, U.S. Attorney Wagner recommended dismissal of the *Jack* prosecution to the United States Department of Justice's National Security Division ("NSD") because, given the circumstances, no substantial federal interest would be served by continued prosecution. *See* Declaration of Benjamin B. Wagner ("Wagner Decl."), ¶ 3. U.S. Attorney Wagner made this recommendation, as a discretionary matter, for a combination reasons, including the following. *Id.*

First, the court made a series of adverse rulings, vigorously opposed by the United States, suggesting it was markedly hostile to the government's case. *See* Wagner Decl., ¶ 4. At the same time, the court gave defendants extraordinary leeway in litigating the case. *Id.*"

Second, the criminal defendants alleged the wiretap, search warrant and complaint affidavits submitted by the undercover agent contained incriminating statements falsely attributed to former defendant General Vang Pao, and failed to disclose certain facts. *See* Wagner Decl., ¶ 5. Although U.S. Attorney Wagner believed the agent acted in good faith, he had never testified in a contested court hearing or trial. *Id.* The upcoming *Franks* hearing raised the possibility that the agent would be subject to vigorous cross-examination regarding his alleged errors, the criminal defendants would suggest he was unreliable among other things, and the court would enter a negative credibility finding, especially given its previous expressed views about the case. *Id.* Because this agent was a critical prosecution witness, such a finding would be damaging beyond its impact on the pretrial motions. *Id.*

Third, the criminal defendants alleged that the prosecutors engaged in misconduct. *See* Wagner Decl. at ¶ 6. Although U.S. Attorney Wagner believed that all personnel acted in good faith, prosecutors and agents inadvertently committed a technical violation of the

18

60-day search warrant deadline relating to computer searches. *Id.* This inadvertent error created a risk of suppression. *Id.*

Fourth, the United States faced a fiercely contested trial and considerable litigation on evidentiary issues. *See* Wagner Decl. at ¶ 7.

Fifth, even if the United States prevailed, the court was likely to impose minimal sentences. *See* Wagner Decl. at ¶ 8.

Finally, taking all of these factors into consideration. U.S. Attorney Wagner performed a cost/benefit analysis."

38. The Government concluded as follows [Exhibit B, Page 6, lines 13-21]:

"As demonstrated by U.S. Attorney Wagner's declaration, the United Stated did not dismiss the *Jack* prosecution because the remaining charges against the Vang Plaintiffs lacked merit. The United States had evidence that the Vang Plaintiffs had committed the remaining crimes with which they were charged, and made no compromise to dismiss them. *See* Wagner Decl., ¶ 11, 12. Instead, it ended the prosecution because the costs of pursuing the *Jack* case outweighed the benefits. *Id.* at ¶ 3-9, *see also Deal v. Alegre*, 2006 WL 436144 at *4 (N.D. Cal. Feb. 21, 2006) (a dismissal in the interests of justice was not inconsistent with guilt where an essential witness was unavailable, the accused had served his sentence and had a prior conviction). Accordingly, the dismissal was not inconsistent with the Vang Plaintiffs' guilt, and as a result, Plaintiffs cannot maintain a malicious prosecution action."

39. The true facts were stated and described in the Appellants Vang et al.'s Appellants' Openign Brief to the US Court of Appeals for the Ninth Circuit, Appeal No. 16-15443, excerpts of which are attached hereto as Exhibit C.

19

40. The point of showing all of these deceits lies and trickeries in the federal prosecution of a group of defendants, including General Pao, is that it all came from Lao People's Democratic Republic spies operating in the eastern district of California to bring down any Hmong person that was associated with the US secret war in Laos. All of the defendants in that case had family members directly involved in the secret war against Laos. For example, Nhia Vang's father was employed by the USA-CIA and died fighting for the USA.

41. The USA government turned on all these people based on a bunch of lies told to them by Laotian spies, and brought a bogus prosecution against all of them, which they later had to abandon under a bunch of false claims that it was based on the interest of justice. In fact, it was based on the fact that there was no evidence to support the crimes alleged, and they had to dismiss the criminal case based on lack of evidence. The evidence was that US government officials ask Hmong people to get involved in a war against Laos, and then turned around and charged those among people with unlawful waging of a war against a friendly country.

42. The facts of that case are shown here to give another example of conduct of the Lao People's Democratic Republic in their campaign against Hmong people that occurred inside the territory of the United States of America, thus invoking jurisdiction of the United States courts over the Alien Tort Claims Act claims asserted herein.

43. The Ninth Circuit Court of Appeals affirmed the trial court's dismissal of the malicious prosecution action, notwithstanding the obviously material issues of fact regarding what really happened. Instead, both the trial court and the Court of Appeals loyally accepted as

20

100% true everything that the US Attorney's Office stated about its dismissal of the underlying criminal action.

44. The falsity of the wire fraud and mail fraud claims brought in the criminal case against plaintiff Seng Xiong, also described in the first claim for relief below, are further shown by the fact that there was actually not a single victim witness that was brought forward during the trial of the action. The only person who came forward was actually Souk Thao, the son of an alleged victim, and a California state police officer. His father, Sao Thao, was a donor to the Hmong homeland program. Souk Thao, the son who testified, was not a donor and was thus not a direct victim.

45. Souk Thao testified that he worked in Riverside County, and his father, donor Sao Thao resides in Cherry Valley, Riverside County, CA.

46. To further show the falsity of that claim the US attorney took approximately $1.2 million in funds from a bank account that was collected-up from donors who were attempting to fund the process of buying land to create a Hmong homeland.

47. Plaintiff's counsel obtained a series of 121 declarations from these so-called victims, in which they made it clear under oath that they were not victims at all, and that they provided money to bring forward a Hmong homeland. An exemplar declaration of one of these witnesses, Cher Pao Xiong, is attached to this complaint as Exhibit D. The following is a list of all of the witnesses of people the US Attorney refer to as victims, who in fact were not victims at all:

*Xiong et al. v. Laos et al.*
COMPLAINT FOR DAMAGES UNDER THE ALIEN TORT CLAIMS ACT; INJUNCTIVE RELIEF; DECLARATORY RELIEF;
ATTORNEYS FEES; REQUEST FOR JURY TRIAL

1. Shue Xiong, 2. Nao H. Xiong, 3. Lao Thao, 4. Cheng Xiong, 5. Chue Ge Vang, 6. Vue Lee, 7. Gacheng Yang, 8. Waseng Xiong, 9. Zong Kai Xiong, 10. TK Lee, 11. Sao Thao, 12. George Yang, 13. Wayer Moua, 14. Kao Lee, 15. Koua Moua, 16. Ter Yang, 17. Zong Koua Moua, 18. Youa Doua Yang, 19. Lee Her, 20. Sia Xiong, 21. Chai Thao, 22. Cher Pao Xiong, 22. Ger Vang, 23. Gee Vang Lor, 24. Wilson Vang, 25. Kai Vang, 26. Cha Moua Vang, 27. Charz Sang Xiong and Bee Yang, 28. Thongdy Vang, 29. Yer Xiong, 30. Vamdernt Lee, 31. Vue S. Vang, 32. Chao Lee, 33. Chang Pao Xiong, 34. Cher Thao, 35. Nhia Xiong Yang, 36. Yao L. Thao, 37. Fai Lao Vang, 38. Chad Thao, 39. Cher Pao Vang, 40. Nancy Lee, 41. Ger Vang, 42. Boua Vang, 43. Ye Vang, 44. Youa Vang, 45. Lee Pao Xiong, 46. Willy Vanh, 47. Cha Ye Xiong, 48. Lee Kue, 49. Nhia X. Lee, 50. Kia Lee, 51. Chongchee C. Wange, 52. Leng Chang, 53. Cheng Chang, 54. Brong Lor, 55. Fong Moua, 56. Richard Lee, 57. Toua Xiong, 58. Pa Zao Her, 59. Mai Nhia Lee, 60. Nhia Chao Her, 61. Bee Lor, 62. Chang Vang and Chia Neng Vang, 63. Poua Yang Thao, 64. Chang Yang and Pang Xiong Yang, 65. Fu Jay Yang, 66. Vong Houa Xiong, 67. Cher Thao and Nhia Xiong Yang, 68. Koua Khang, 69. Zoua Xiong, 70. Songher Her, 71.Wa Seng Her, 72. Wechai Moua, 73. Thao Xiong, 74. Peter Z. Thao, 75. Houa Thao and Xia Yang, 76. Bobby Joe Yang, 77. Yia Yang, 78. Hue Yang, 79. Chiato, 80. Yur Yang, 81. Charles Cheu Yang, 82. Cheryong Thao, 83. Boua Lee Lor, 84. Sang Moua, 85. Wilson C. Vang, 86.Sai Her Xiong, 87. Ka C. Xiong, 88. Chong Veng Moua, 89. Tomsing Her, 90. Khua Jer Vang, 91. Yayoashi Her, 92. Ngia Her, 93. Youa Pao Hang, 94. Shong Xiong, 95. Kou Xiong, 96. Pengsue Lee, 97. Ge Lee, 98. Charles

Xiong and Melinda Xiong, 99. Der Xiong, 100. Thong Lee, 101. Harry Xai Lee, 102. Bee Yang, 103. Der Xiong, 104. Frederic Vang, 105. Helene Vang, 106. Jong Lue Yang, 107. Ka Vang, 108. Koua Xiong, 109. Mai H. Vang, 110. Pao Ge Xiong, 111. Parher Yang, 112. Peter Lee, 113. Sor Vang, 114.Thai Sau Ly and A Seng Thao, 115. Xe Lor, and 116. Zong Paul Vang, 117. Nhia Xiong Thao, 118. WaChore Yang and Shong Vang; 119. Lee Pao Vang, 120. Houa Xiong, and 121. Sao Thao.

48. The statement set forth in Exhibit D include the following statement of facts:

"2. I recently received a check from the United States government purporting to be restitution as a result of the USA's case against Seng Xiong [United States District Court, District of Minnesota Case No. 16-CR-167(SRN)] from the funds collected by Hmong Tebchaws. I wish to return these funds back to the USA and with instructions to keep all those funds together so that Hmong Tebchaws may use those monies to purchase lands to be arranged for hopefully in Thailand, but somewhere on this Earth that we will then call a Hmong homeland.

3. I am not a victim of any sort in this case. At no time did I believe or ever say that Seng Xiong somehow tricked or defrauded me."

49. The list of 121 donors to the Hmong country campaign describe above include a substantial number of donors [at least 9 out of the 121] that came from Fresno and other locations within the Eastern district of California.

50. A further falsity uncovered by plaintiff council is the bizarre fact that the US Attorney having committed its own fraudulent conduct in seizing the bank account of the Hmong country effort, failed to actually pay it back to the donors. We have collected up 60 declarations by donors who never got their money back/all of their money back. Attached hereto as Exhibit E is an exemplar statement made by donor Pao Xiong, who states therein:

"I, Pao Xiong, had contributed to Mr. Seng Xiong prior to his arrest in March 2016 in the amount indicated below. While the Court would not return my contribution to Mr. Xiong, I request that it be sent to me so I can do whatever I want with the fund.

Total amount of contribution to Mr. Seng Xiong    $1,855.00

Total amount I have received from the Court/DOJ   $560.00

The amount of restitution to be sent back to me    $1,295.00"


51. The following list of individuals are donors who put money in that was taken in the prosecution of Mr. Seng Xiong, and kept in trust by the US attorney, and never returned back to these donors:

1. America Vang
2. Boua Lee Lor
3. Brandy Xiong
4. Cha Her
5. Cha Moua Vang
6. Cha Vang
7. Cha Xue Lee
8. Chang Chai Vang
9. Chao Lor
10. Chao Vang
11. Charles Xiong
12. Charlie Xiong
13. Cheng Xiong
14. Cher Pao Vang
15. Chong Sao Vang

16. Chong Vang
17. Fai Lao Vang
18. Francois Vang
19. Harry X. Lee
20. Her Pao Vang
21. Jeff P. Xiong
22. John T. Xiong
23. Jong Lue Yang
24. Ka Vang
25. Khaisu Xiong
26. Kue Lee
27. Lee Pao Xiong
28. Lor Vang
29. Lou Tou Yang
30. Luc Ya
31. Maiyia Xiong
32. Mee Lor
33. Nao Chu Heu
34. Nao Hue Xiong
35. Neng Xiong
36. Neng Yang
37. Nhia X Lee
38. Nou C. Yang
39. Pao Xiong
40. Pao Xiong
41. Phia Yang
42. Prentice H. Vaj
43. Sai Her Xiong
44. Sao Thao
45. Seeh Xiong
46. Shoualou Yang
47. Sia Xiong
48. Sor Vang
49. Soua Xa Yang
50. Tong Pao Lee
51. Toua Lee
52. Toua Xiong
53. Tria Xiong
54. Vang Yang
55. Victor J. Xiong
56. Wilson C. Vang
57. Xao L Thao
58. Yang Her
59. Youa Vang
60. Zong Paul Vang

52. The list of 60 donors to the Hmong country campaign who provided declarations described above indicating that they had not received the restitution payment, include substantial number of donors [10 out of 60] from Fresno, CA and other locations within the Eastern District of California.

53. Due to the federal criminal law process in limitations on post judgment relief, the issues regarding the total lack and absence of a real victim in the case never got heard on their merits, and instead were summarily rejected based on a failure to raise them on the first round of post-judgment challenges. The issues about the restitution and the collection up of funds the amount of the restitution, and whether or not the amount was properly distributed or not, likewise never got to see the light of day due to restrictions on challenging restitutionary judgments.

54. Because of those restrictions under federal law, not only could Seng Xiong not challenge the lack of an actual recipient victim witness giving testimony against Seng Xiong (literally zero were brought forward by the US attorney), and the notion that the so-called victims were not victims at all, never considered themselves victims, and were instead earnest donors in hopes of creating a collective fund sufficient enough to buy a piece of land somewhere to be a Hmong homeland was never able to be litigated either on the merits in the trial court and/or in any appellate procedure. It remained buried under federal criminal law procedure that limits defendants' ability to challenge convictions to basically one shot at that, and these issues were not raised in that one shot. As a result, these issues were never litigated on the merits and never saw the light of day. They are

26

thus asserted here as claims that have not been decided on the merits, and should be placed here at issue on the issue of the court's jurisdiction to permit and authorize this Alien Tort Claims Act based on activities of Lao PDR spies creating these bizarre criminal cases that were done in an entirely fraudulent and false manner based on false information provided by Lao PDR spies acting in the United States.

55. The falsities embedded into the criminal prosecutions that occurred in Sacramento and in Minnesota are flagrant, eminently, provable and show the impact of the behavior of the Lao PDR spies operating inside the territory of the United States of America.

56. In addition to Defendant Yang Dao, Plaintiffs are aware of the names of at least two others such Lao PDR spy operatives working inside the territory of the United States to collect information concerning Hmong political activities and reporting that information back to Laos PDR officials: George Vue, and Dr. Sam Thao.

57. These Laos PDR directed spying activities in the USA occur at a substantial level in Fresno, California and other locations within the Eastern District of California.

58. In Seng Xiong's criminal case in Minnesota, Defendant Dr. Yang Dao had publicly warned Seng Xiong and his group that they must stop and cease any activities in the pursuit of a Hmong Country because there is no laws allowing the Hmong People to have a Country. Dr. Dao further said and told the US government, US Prosecutor's Office, St. Paul Police Officers, and US Secret Service that there is no place, no land left anywhere in Southeast Asia or Asia for Hmong to have a country. Therefore, he argued that Seng

27

Xiong's mission to establish a Hmong Country is fraudulent, and those supporting the Mission by voluntary donating money to the Mission are victims.

59. All these things are untrue and lies given by Dr. Yang Dao. Furthermore, Dr. Yang Dao had lobbied Steve Moua (a key witness in the criminal) to work and cooperate with him.

60. One of other things that the US Prosecutor in Minnesota told Seng Xiong's lawyer Allan Chaplain that the real reason the US government decided to arrest Seng Xiong was that he sold 10 acres of land in a foreign country, which is a lie told to US Prosecutor Office by Hmong Attorney Sia Lor in Minnesota.

61. Dr. Yang Dao has thus recruited many Hmong intellectuals, Veterans of the old NeoHom people, General Vang Pao's sons to work with him to stop Seng Xiong's mission.

62. A reasonable inference of the facts in light of what we know about what they did in the Minnesota case against you is that it was the result of Laos PDR spy operatives in the USA working with USA law enforcement to bring about false claims and false charges against politically-active Hmong individuals.

# Exhibit D

1  Herman Franck, Esq. (SB #123476)
   Elizabeth Betowski, Esq. (SB #245772)
2  **FRANCK & ASSOCIATES**
   910 Florin Road #212
3  Sacramento, CA 95831
   Tel. (916) 447-8400
4  Email: franckhermanlaw88@yahoo.com

5  Attorneys for Plaintiffs Seng Xiong, Thao Xiong, Lor Vang, Lue Vang

6                 UNITED STATES DISTRICT COURT
7           FOR THE EASTERN DISTRICT OF CALIFORNIA

8  SENG XIONG; THAO XIONG; LOR VANG;        Case No. _____
   and LUE VANG
9
10          Plaintiffs,                     **COMPLAINT FOR VIOLATION OF THE**
                                            **ALIEN TORT CLAIMS ACT,**
11          v.                              **INJUNCTIVE RELIEF; DECLARATORY**
                                            **RELIEF; ATTORNEYS FEES; REQUEST**
12  **LAO PEOPLE'S DEMOCRATIC**             **FOR JURY TRIAL**
    **REPUBLIC; PRESIDENT THONGLOUN**
13  **SISOULITHIS; PRIME MINISTER**
    **SONXAI SIPHANDON; SOUANSAVAN**
14  **VI-GNAKET, MINSTER OF JUSTICE;**
    **GENERAL CHANSAMONE**
15  **CHANYALATH, MINISTER OF**
    **DEFENSE; LIEUTENANT**
16  **GENERAL VILAY LAKHAMFONG,**
    **MINISTER OF PUBLIC SECURITY; DR.**
17  **YANG DAO**
18
19          Defendants
20

21

22  Plaintiffs Seng Xiong, Thao Xiong, Lor Vang, and Lue Vang hereby allege and state as follows:

23

24

25

26

27

28
                                                                              1
*Xiong et al. v. Laos et al.*
COMPLAINT FOR DAMAGES UNDER THE ALIEN TORT CLAIMS ACT; INJUNCTIVE RELIEF; DECLARATORY RELIEF;
ATTORNEYS FEES; REQUEST FOR JURY TRIAL

Article 16, 1966 International Covenant on Civil and Political: "Everyone shall have the right to recognition everywhere as a person before the law"

Article 26 of the 1966 International Covenant on Civil and Political Rights states: "All persons are equal before the law and are entitled without any discrimination to the equal protection of the law. In this respect, the law shall prohibit any discrimination and guarantee to all persons equal and effective protection against discrimination on any ground such as race, colour, sex, language, religion, political or other opinion, national or social origin, property, birth or other status."

## V.
### FIRST CLAIM FOR RELIEF FOR VIOLATION OF THE ALIEN TORT CLAIMS ACT

[Plaintiffs Seng Xiong, Thao Xiong, Lor Vang, and Lue Vang Against all Defendants]

93. This is a First Claim for Relief for Violation of the Alien Tort Claim Act, by Plaintiffs Seng Xiong, Thao Xiong, Lor Vang, and Lue Vang against defendants Lao People's Democratic Republic; President Thongloun Sisoulithis; Prime Minister Sonxai Siphandon; Souansavan Vi-gnaket, Minster of Justice; General Chansamone Chanyalath, Minister of Defense; Lieutenant General Vilay Lakhamfong, Minister of Public Security; and Dr. Yang Dao.

94. The preceding paragraphs of the Complaint are incorporated herein as though set forth in full.

95. The defendants and each of them committed a series of intentional torts against each of the plaintiffs in the form of creating an official policy of the Lao PDR to generally commence a campaign of horrors and atrocities against all Hmong people whose family

57

members were connected to the USA CIA secret war in Laos during the Vietnam War era.

96. The particulars of those atrocities and campaign of whores have been specified above and will be generally referenced in this claim for relief as the atrocities committed against the Hmong people in Laos.

97. The torts and actionable wrongdoings that arose from that conduct include the following intentional torts that each of the Plaintiffs were individually and personally aggrieved by, as was further set forth above:

98. Violation of each Plaintiff's right to peaceful and quiet enjoyment of their homes and property in Laos after the peace treaties were entered into. Instead of permitting peaceful coexistence between the Hmong people and the Laos Communist regime, the Communist regime went after the Laos people in a campaign of horrors and atrocities, which required for survival the Hmong people generally to flee into the jungles. Plaintiffs fled the country of Laos, and made their way over to Thailand, where they became refugees. They had to give up all of their homes, possessions, and belongings, including their real property their personal property livestock basically their entire lives were removed from where they had grown up where they had lived The only place they really had known. Each of the plaintiffs left louse for Thailand became refugees in Thailand and were granted refugee visas to come to USA, came to USA, and became permanent residency visa holders in the USA. Each of the plaintiffs is currently in USA as a green card holder and is thus in the category of an alien asserting this tort claim.

99. Each of the plaintiffs have a prospective economic advantage in the form of the creation of a Hmong homeland. The Lao People's Democratic Republic, with the direct participation of the named individual defendants herein, and with the assistance of Laos

58

spies and operatives based in the territory of the USA, and as described above, have
intentionally and willfully interfered with plaintiffs' prospective economic advantage by
taking steps to eliminate plaintiff's attempts to establish that Hmong homeland.

100.    The defendants and each of them accomplished this interference by making sure
through their spying efforts that the process of establishing a separate country for the
Hmong people would never happen.

101.    One of the events that led to a complete cessation of the Hmong homeland
campaign was done by defendant Yang Dao, who gave false police reports to the
Minnesota Police department that the Hmong homeland program was actually some kind
of an illegal gambling ring. There was never any kind of prosecution for any kind of
illegal gambling ring, but the false reporting of the illegal gambling ring was enough to
cause the Minnesota Police Department to refer the matter over to the USA Secret
Service. The USA Secret Service agents then got involved, and completed a different
kind of investigation into a claim of wire fraud and mail fraud. That claim was based on
the notion that the Hmong homeland campaign, of which all plaintiffs have been directly
and personally involved in, was actually a fraud to just collect money up from Hmong
people without any intent of ever actually establishing a Hmong homeland. This was a
false report in that plaintiff's at all times duly intended to set up a monk country, and still
have that general intent and are still undertaking efforts to establish a Hmong homeland.

102.    The US federal government took the position that such a Hmong homeland would
require official USA permission and or official United Nations permission, and that
Plaintiff Seng Xiong never obtained that permission.

103.    Unfortunately, the jury accepted that thesis, and convicted Seng Xiong during
2017 following a federal court trial in the United States District Court for the District of

Minnesota. Seng Xiong was sentenced to 8 years in prison, and was released from that imprisonment during May 2022.

104.     The other plaintiffs were not prosecuted in any way, shape, or form from that action.

105.     When the United States government arrested Seng Xiong, they also took approximately $1.2 million in donation funds that had been given over to the Hmong homeland effort. These funds were obtained as a budget to purchase lands in some willing post country. As of the time of his arrest, the target country to serve as a host country was Thailand. The concept was that the Hmong homeland campaign would purchase a large track of land in the northern part of Thailand, which before the end of the Vietnam War, actually belonged to Laos and was ceded over by treaty to Thailand. Seng Xiong was actually headed to Thailand to do negotiations and discussions with high officials about whether they would be willing to host a Hmong homeland inside their country.

106.     The concept is similar to what USA does with Native American tribes. The USA regularly allows USA tribes to operate sovereign land holdings called reservations, in which Native Americans are permitted to operate a sovereign nation of their people, complete with their own court systems; legislative bodies; executive branches in the form of tribal councils; and to conduct the regular aspects of governmental sovereignty that a country normally would possess; such as economic self-determination; business activities; housing development so people would have a place to live; education systems so people would have a place to learn; health systems so people could tend to their health needs; law enforcement officials so that there would be keepers of the peace; and citizen acceptance and approval systems that allowed for new members to arrive to the Native American nations, and become citizens of that nation.

107.     In the same way, the Hmong people seek to establish such a country/homeland in a country to have the normal sovereign rights of a country as specified above in the analogy of the Native Americans, and to do all those things that countries normally do for their citizens.

108.     The arrest of Seng Xiong brought the Hmong country/homeland program to a standstill. The government seized all the funds that would have been used and made available to buy land, and rather than allowing that program to go forward, stopped it in its tracks.

109.     As noted above, plaintiffs have continued to work on the campaign to establish a country/ homeland for the Hmong people and have not given up hope on this extremely important effort on behalf of the Hmong people.

110.     Further torts committed by the Defendants and each of them include the murder and torture of Plaintiffs' immediate family members, thus the intentional tort of intentionally assaulting and killing the plaintiffs family members. as specified above.

111.     The conduct in implementing a policy that continues through to this writing also constitutes the intentional tort of infliction of extreme emotional distress causing each of the plaintiffs general damages.

112.     The conduct in eliminating all possibility of residing peacefully in Laos after the war, constitutes the intentional tort of interference with and breach of the right to peaceful enjoyment of their property and land.

113.     The conduct in interfering with plaintiff's efforts to establish a Hmong Homeland constitutes the intentional tort of intentional interference with prospective economic

advantage. From the spying efforts of the defendants USA-based spies including defendant Dao, the defendants had actual knowledge of the plaintiffs' prospective economic advantage in terms of their efforts to locate and establish a place where Hmong people could call home. The defendants intentionally took the efforts described above to interfere with that perspective economic advantage with the intent to ruin and destroy all hopes, dreams, and activities of the plaintiffs to form a Hmong homeland somewhere on Earth.

114.    These intentional torts are all intertwined with one another, and are further part and parcel of the overall campaign by the Laos Communist regime and each of the defendants herein to commit a series of war crimes and atrocities against the among people generally and including the plaintiffs specifically.

115.    As such because the defendants have committed war crimes there is no political immunity for war crimes, nor is there any statute of limitations for commission of these war crimes.

116.    The November 11, 1970 Convention on the Non-Applicability of Statutory Limitations to War Crimes and Crimes Against Humanity was adopted and opened for signature, ratification and accession by United Nations General Assembly resolution 2391 (XXIII) of 26 November 1968. Pursuant to the provisions of its Article VIII (90 days following the deposit of the tenth ratification), it came into force on 11 November 1970.

117.    The Convention provides that no signatory state may apply statutory limitations to:

- War crimes as they are defined in the Charter of the Nürnberg International Military Tribunal of 8 August 1945.

62

# Exhibit E

# UNITED STATES DISTRICT COURT
## FOR THE
## EASTERN DISTRICT OF CALIFORNIA

SENG XIONG, ET AL.,

                             **CLERKS CERTIFICATE OF**
                                **ENTRY OF DEFAULT**

                            **2:23−CV−02531−DJC−DB**

         v.

LAO PEOPLE'S DEMOCRATIC REPUBLIC,
ET AL.,

---

**TO ALL COUNSEL:**

    By application of Plaintiff and it appearing that the defendant having been duly served with process as appears from the record and papers on file herein; and having failed to appear, plead or answer Plaintiff's complaint within the time allowed by law; the default of the following Defendant(s) is/are hereby entered:

    Chansamone Chanyalath, Vilay Lakhamfong, Lao People's Democratic Republic, Sonxai Siphandon, Thongloun Sisoulithis, Souansavan Vi−Gnaket

Counsel is/are referred to Rule 55(b), of the Federal Rules of Civil Procedure, and Local Rules 302(c)(19) and 230. If there is more then one defendant in this case, counsel are further referred to Fed. R. Civ. P. 54(b).



                                 **IN TESTIMONY WHERE OF, I have hereunto subscribed my name and affixed the seal of the United States District Court for the Eastern District of California, on February 5, 2024.**

                                 **KEITH HOLLAND**
                                 **CLERK OF COURT**

                            **By:** /s/ A. Kastilahn

Case 2:23-cv-02531-DJC-DB   Document 15   Filed 02/05/24   Page 2 of 2

Deputy Clerk

**PROOF OF SERVICE**

I, Elizabeth Betowski, declare as follows: That I am an adult over the age of 18, and have an office in Sacramento, California, and am not a party to the present action. On the date signed below, I caused to be served by Federal Express overnight delivery, the following document:

1. **PLAINTIFFS SENG XIONG; THAO XIONG; LOR VANG; AND LUE VANG MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT DR. YANG DAO'S MOTION TO DISMISS; ALTERNATIVE REQUEST FOR LEAVE TO AMEND**

The above-listed documents were served on all parties by Federal Express overnight delivery to the following addressees:

Dr. Yang Dao
4444 Fallgold Parkway North
Brooklyn Park, MN 55443

I declare under oath and under penalty of perjury that the foregoing is true and correct and that this Declaration was executed in Sacramento, California, on February  6 , 2024.

Elizabeth Betowski

25